UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| CHAD DOUGLAS DRESSEN,<br><br>            Movant,<br><br>     vs.<br><br>UNITED STATES OF AMERICA,<br><br>            Respondent. | 4:18-CV-04153-KES<br><br><br>REPORT AND RECOMMENDATION |

## INTRODUCTION

This matter is before the court on the *pro se* motion of Chad D. Dressen pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct his sentence.  See Docket No. 1.  Now pending is a motion to dismiss by United States of America ("government").  See Docket No. 19.[1]  Mr. Dressen resists the motion.  See Docket No. 22.  This matter has been referred to this magistrate judge for a recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and the October 16, 2014, standing order of the Honorable Karen E. Schreier, United States District Court Judge.

---

[1] Matters filed in Mr. Dressen's civil § 2255 motion will be cited to by the court's docket number alone.  Matters filed in Mr. Dressen's underlying criminal action will be cited by the docket number therein preceded by "CR."

## FACTS

### A.    Pre-Plea Events

Mr. Dressen was indicted on May 9, 2017.  See United States v. Dressen, 4:17-cr-40047-KES (hereinafter "CR"), Docket No. 1 (D.S.D. May 9, 2017).  He was charged, along with John Alan Gorter, with conspiracy to distribute 50 grams or more of a mixture and substance containing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846.  Id.

Mr. Dressen appeared on the indictment on May 17, 2017, and the Federal Public Defender was appointed to represent him.  See CR Docket Nos. 9, 11.  Thereafter, on July 17, 2017, Mr. Dressen privately retained Mr. D. Sonny Walters to represent him.  See CR Docket No. 40.

On February 22, 2018, the government filed an information pursuant to 21 U.S.C. § 851(a) notifying Mr. Dressen that it would seek increased punishment because Mr. Dressen had a prior felony drug conviction.  See CR Docket No. 72.  The conviction the government was relying on in asserting the § 851(a) information was a conviction for fifth-degree possession of drugs in Lincoln County, Minnesota, on June 26, 2015.  Id.

### B.    Plea Agreement Documents

Also on February 22, 2018, Mr. Dressen filed a plea agreement signed by him.  See CR docket No. 73.  Under the terms of the agreement, Mr. Dressen agreed to plead guilty to the indictment, which carried with it a penalty of 10 years (120 months) mandatory minimum incarceration and up to life imprisonment.  Id. at p. 2, ¶C.  The government provisionally agreed under the

terms of the agreement to reduce Mr. Dressen's offense level by three levels for timely acceptance of responsibility.  Id. at pp. 2-3, ¶¶E & F.  The only sentencing recommendation made by the government was to recommend a sentence within statutory limits.  Id. at p. 3, ¶G.

The plea agreement recited the fact that the government would file the above-mentioned information pursuant to § 851(a) seeking enhanced penalties, that Mr. Dressen acknowledged this fact, and Mr. Dressen agreed not to challenge the conviction or the resulting enhanced penalty.  Id. at p. 6, ¶K.  The penalty set forth in paragraph C of the plea agreement reflected the enhanced penalty as a result of the § 851(a) information.  Id.

Under the plea agreement, Mr. Dressen waived his right to appeal any non-jurisdictional issues.  Id. at p. 7, ¶P.  Excepted from this waiver was the right to appeal any decision by the court to depart upward under the United States Sentencing Guidelines ("USSG") and the right to appeal the substantive reasonableness of the sentence imposed should the court depart upward or apply an upward variance under 18 U.S.C. § 3553(a).  Id.

The plea agreement was accompanied by a written statement of facts in support of the plea signed by Mr. Dressen.  See CR Docket No. 74.  In the statement, Mr. Dressen asserted the following facts were true:

> My name is Chad Douglas Dressen.
> Beginning on or about December 20, 2016, and continuing until February 12, 2017, I, along with at least one other person, reached an agreement or came to an understanding to distribute 50 grams or more of a mixture and substance containing methamphetamine in the District of South Dakota.
> I voluntarily and intentionally joined in the agreement or understanding to distribute methamphetamine.

3

> At the time I joined in the agreement or understanding to distribute methamphetamine, I knew the purpose of the agreement or understanding.
>
> While I was actively involved in furthering the purpose of the agreement or understanding, I could foresee that the quantity of methamphetamine involved in the agreement or understanding exceeded 50 grams of methamphetamine, and I personally distributed more than 50 grams of methamphetamine.
>
> During my involvement, I received methamphetamine from others and provided it to co-conspirators to further distribute to customers in South Dakota. I also distributed methamphetamine myself to customers in South Dakota and elsewhere.
>
> The parties submit that the foregoing statement of facts is not intended to be a complete description of the offense or the Defendant's involvement in it. Instead, the statement is offered for the limited purpose of satisfying the requirements of Fed. R. Crim. P. 11(b)(3). The parties understand that additional information relevant to sentencing, including additional drug quantities, may be developed and attributed to the Defendant for sentencing purposes.
>
> I was also convicted of Fifth Degree Possession of Drugs, a felony, in Lincoln County, Minnesota, in 2015.

See CR Docket No. 74.

## C.    Change of Plea Hearing

A change of plea hearing was held on March 1, 2018. See CR Docket No. 98. At the beginning of the hearing, Mr. Dressen was placed under oath and swore to tell the truth. Id. at p. 2. All the following testimony given by him during the hearing was under oath.

Mr. Dressen told the court he was 48 years old and a high school graduate. Id. at p. 3. He testified he was not under the influence of any drug, medication or alcohol. Id. at p. 4. Mr. Dressen told the court he had reviewed the indictment, had a chance to discuss the charge in the indictment with his lawyer, and that he was fully satisfied with the advice and representation given to him by his lawyer. Id. at p. 5.

4

Mr. Dressen testified he had read the plea agreement documents before signing them and that he had a chance to discuss those documents with Mr. Walters.  Id.  Mr. Dressen told the court the documents represented the entirety of his agreement or understanding with the government.  Id.  He told the court he understood the plea documents.  Id. at p. 6.

Mr. Dressen indicated he had been somewhat argumentative with his lawyer, and the court invited counsel and Mr. Dressen to explain.  Id.  Mr. Walters explained that the discussion concerned Mr. Dressen's felony drug conviction used for enhancement pursuant to the government's § 851(a) information.  Id. at pp. 6-7.  Mr. Dressen testified that he pleaded guilty to the charge and, insofar as that went, he admitted it was a valid conviction.  Id. at p. 7-8.  But he explained his lawyers urged him to appeal, because they felt he would be successful on appeal.  Id.  However, he was only sentenced to six months on work release and he did not want to pay the $15,000 the lawyers wanted to appeal the conviction.  Id.  He felt he would already be out of jail/work release by the time the appeal was concluded.  Id. at p. 8, 10.   He stated that his gun rights had been restored and the five Oxycodone he possessed were his own prescription pain pills for a "busted back injury."  Id. at p. 8.  He explained that the prescription was expired, but it was his own prescription.  Id.  He told the court his probation officer in Minnesota had offered to come to court and testify on his behalf.  Id.

The court clarified that Mr. Dressen did not in fact appeal his drug conviction and that the conviction became final.  Id. at p. 10-11.  Mr. Dressen

5

agreed that was true.  <u>Id.</u>  The court informed Mr. Dressen at the time of sentencing, he could bring anyone to speak on his behalf that he wanted.  <u>Id.</u> at pp. 11-12.  But for purposes of the change of plea hearing, the court was just trying to find out (1) if Mr. Dressen was going to plead guilty and (2) if he was going to admit he had the prior drug conviction listed in the government's information.  <u>Id.</u> at p. 12.  Mr. Dressen indicated yes to both questions.  <u>Id.</u>

The court returned to the plea agreement documents and asked Mr. Dressen if he understood the terms of the documents.  <u>Id.</u>  Mr. Dressen testified he did.  <u>Id.</u>  Mr. Dressen further testified that Mr. Walters had been able to answer all his questions about the documents.  <u>Id.</u>  Mr. Dressen testified no one had made any promises to him about the plea agreement that were not in writing in the plea agreement.  <u>Id.</u>  He also testified no one had threatened him or forced him in any way to accept the plea agreement.  <u>Id.</u> at pp. 12-13.

The court advised Mr. Dressen that it could reject both parties' sentencing recommendations and might sentence Mr. Dressen more severely that he anticipated.  <u>Id.</u> at p. 13.  If this happened, the court would not allow Mr. Dressen to withdraw his guilty plea.  <u>Id.</u> at p. 16.  Mr. Dressen indicated he understood that.  <u>Id.</u> at pp. 13, 16. The court asked defense counsel if all plea offers had been communicated to Mr. Dressen. <u>Id.</u>  Mr. Walters said they had. <u>Id.</u>  The court asked Mr. Dressen if he was pleading guilty of his own free will because he was guilty.  <u>Id.</u>  Mr. Dressen answered he was.  <u>Id.</u>

The court advised Mr. Dressen that if he pleaded guilty to this crime, there was a mandatory minimum sentence the court was required to impose of 10 years' imprisonment. Id. at p. 14. The court told Mr. Dressen the maximum term of imprisonment was life. Id. Mr. Dressen testified under oath that he understood this. Id. at p. 15.

The court explained the USSG were advisory, but the court was required to calculate Mr. Dressen's sentence under the guidelines and consider it. Id. Mr. Dressen testified that he and Mr. Walters had discussed the USSG. Id. The court advised Mr. Dressen that it could not tell him that day what his USSG range was going to be and that it might be different from the estimate Mr. Walters had provided. Id. at pp. 15-16. Mr. Dressen testified he understood this. Id. at p. 16.

The court further advised Mr. Dressen that after it determined what his USSG range was, the court may impose a sentence that was higher or lower than the USSG range. Id. Mr. Dressen testified under oath he understood this. Id.

The court advised Mr. Dressen that under the terms of the plea agreement, he was giving up the right to appeal except for the right to appeal upward departures and jurisdictional issues. Id. at p. 17. Mr. Dressen testified he understood he was giving up the right to appeal all other issues in his case. Id.

The court told Mr. Dressen he had a right to plead not guilty and to have a trial by jury. Id. The court advised Mr. Dressen that at a jury trial, the court

7

would tell the jury Mr. Dressen was presumed innocent and the burden was on the government to prove his guilt beyond a reasonable doubt. Id. The court told Mr. Dressen he would have the right to the assistance of counsel at trial, including counsel appointed at court expense. Id. at pp. 17-18. The court said at trial, Mr. Dressen would have the right to see and hear all witnesses and have them cross-examined in his defense. Id. at p. 18.

At trial, the court explained to Mr. Dressen he had the right to testify or not to testify. Id. Also, he would have the right to use subpoenas to make sure witnesses he thought were helpful would come to court to testify. Id. The court told Mr. Dressen that if he opted not to testify or put on any evidence, the court would inform the jury those facts could not be used against him. Id.

The court told Mr. Dressen if he entered a guilty plea, there would not be a trial and he would be giving up all the rights the court just described. Id. Mr. Dressen inquired whether, if he pleaded guilty, he could still have people subpoenaed to testify on his behalf. Id. The court assured him he could. Id. Mr. Dressen told the court his probation officer would testify for him, but she had requested a subpoena. Id. at p. 19.

The court explained to Mr. Dressen that if he went to trial, the government would have to prove beyond a reasonable doubt the following essential elements of conspiracy to distribute methamphetamine: (1) beginning December 20, 2016, and continuing until February 12, 2017, in the District of South Dakota and elsewhere, two or more persons reached an agreement or came to an understanding to distribute 50 grams or more of

methamphetamine; (2) Mr. Dressen voluntarily and intentionally joined in the agreement or understanding either at the time it was first reached, or at some later time while it was still in effect; and (3) that at the time Mr. Dressen joined the agreement or understanding, he knew the purpose of the agreement or understanding.  Id.

The court asked Mr. Dressen if he understood this was what he was charged with and that this was what the government would have to prove if his case went to trial.  Id. at p. 20.  Mr. Dressen testified he understood this.  Id.

The court asked Mr. Dressen whether he had read the factual basis statement before he signed it.  Id.  He indicated he did.  Id.  The court asked Mr. Dressen whether everything in the statement was the truth.  Id.  Mr. Dressen said it was.  Id.

The court made specific inquiry about Mr. Dressen's participation in the conspiracy.  Id. at pp. 21-22.  The court asked if Mr. Dressen paid cash for his meth or whether it was fronted to him.  Id.  Mr. Dressen said he received meth under both circumstances.  Id.  He also testified that sometimes co-conspirators would give him meth with instructions to deliver it to others, which he would then carry out.  Id.  He would then be paid either in cash or in meth by the supplier.  Id.  The court then stated based on the factual basis statement and Mr. Dressen's testimony under oath, the court concluded he was part of the meth conspiracy and there was an independent factual basis for the plea.  Id.  Mr. Dressen responded, "yes."  Id.  After this, Mr. Dressen pleaded guilty.  Id. at p. 22.

The court found Mr. Dressen was fully competent and capable of entering an informed plea, that he was aware of the nature of the charges and the consequences of the plea, and that his plea of guilty was a knowing and voluntary plea, supported by an independent basis in fact containing each of the essential elements of the offense.  Id.  The court then accepted Mr. Dressen's plea and adjudged him guilty of the offense.  Id.

The court then addressed the government's § 851(a) information.  Id. at p. 23.  The court stated the information indicated Mr. Dressen had a prior felony conviction in Lincoln County, Minnesota, from June 26, 2015, for fifth-degree possession of drugs.  Id.  The court asked Mr. Dressen whether he admitted or denied that he had this conviction.  Id.  Mr. Dressen admitted it.  Id.

**D.    PSR and Sentencing Hearing**

A draft presentence report ("PSR") was prepared and filed on April 16, 2018.  See CR Docket No. 88.  Thereafter, Mr. Walters filed numerous objections to the draft PSR on Mr. Dressen's behalf.  See CR Docket No. 89. Mr. Walters objected to the drug quantity calculations, particularly paragraphs 9, 16, 17 and 18 in which other witnesses indicated Mr. Dressen was seen with seven pounds of meth and $100,000 in cash; 20 pounds of meth; and that he obtained 5 to 10 pounds of meth every one to three weeks for the past year.  Id. at p. 1.  Counsel also objected to the base offense level of 38, which was in turn based on the above objected-to drug quantity calculations.  Id.  Mr. Walters also objected to a two-point increase in the offense level based on Mr. Dressen

10

engaging in a high speed chase with law enforcement which created a substantial risk of death or serious bodily injury to another.  Id.

The United States Probation Officer who authored the PSR declined to change the PSR in any respect in response to Mr. Dressen's objections.  See CR Docket No. 92.  As to the drug calculations based on witnesses' testimony, the PSR author noted that the witnesses who provided the evidence as to amounts had a substantial amount of contact with Mr. Dressen, including packaging drugs with Mr. Dressen in Dressen's own home, substantial and detailed knowledge of Mr. Dressen's drug trafficking activities, and one witness had known Mr. Dressen since he was age four.  Id.  The enhancement for creating a grave risk to public safety was unchanged because it was based on law enforcement investigative reports.  Id.

In the final PSR, Mr. Dressen's criminal history category was calculated.  See CR Docket No. 91 at pp. 9-14, ¶¶34-55.  The PSR accorded Mr. Dressen four criminal history points, placing him in Criminal History Category III.  Id. at p. 12, ¶42.  Mr. Dressen's four criminal history points came from the following convictions:

| 2 points | For committing the instant offense while Mr. Dressen was under a criminal justice sentence for possession of drugs in the fifth degree |
| 2 points | For a June 26, 2015, conviction for possession of drugs in the fifth degree and possession of a pistol/assault weapon in Lincoln County, MN |

The narrative in the PSR indicated Mr. Dressen pleaded guilty to both charges.  Id. at p. 11, ¶40.  As to the 2015 charges, he was initially sentenced to 60

months' custody, stayed for 5 years, with 180 days confinement and 5 years'
probation on the gun charge.  Id.  On the drug possession charge, he was
initially sentenced to 13 months' custody, also stayed for 5 years, 180 days'
confinement and 5 years' probation.  Id.  Other convictions and arrests were
detailed in the PSR, but no points were assessed for any other criminal
involvement.  Id. at pp. 9-14, ¶¶34-55.

A sentencing hearing was held on May 21, 2018.  See CR Docket
No. 100.  At the hearing, Mr. Walters withdrew his previously-filed objections to
the PSR.  Id. at p. 3.  The government made no objections to the PSR, but
indicated the parties had stipulated to the drug quantity and the resulting base
offense level.  Id.

Government counsel informed the court that the parties had stipulated
to a base offense level of 36 instead of the 38 set forth in the PSR.  Id. at
pp. 3-4.  The parties also stipulated to the two-point increase because of the
grave risk to public safety caused by Mr. Dressen by engaging in a high speed
flight from police.  Id.  The parties also stipulated that Mr. Dressen should
receive all three points for acceptance of responsibility, thus yielding a total
offense level of 35.  Id. at p. 4.  Government counsel represented that the drug
quantity stipulated to was 20 kilograms based on a post-Miranda[2] interview of
Mr. Dressen following his first arrest.  Id.  Mr. Walters agreed.  Id.

Based on the parties' stipulation as to base offense level and drug
quantity, and based on a criminal history category of III, the court announced

---

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

the advisory USSG range was 210 to 262 months with a mandatory minimum term of incarceration of 10 years (120 months). Id. at pp. 4-5. Both lawyers agreed with the court's announced USSG range. Id. at p. 5.

Mr. Walters addressed the court on Mr. Dressen's behalf and asked for a downward variance. Id. at pp. 5-6. Mr. Walters pointed out that Mr. Dressen's post-Miranda interview was based on his statements regarding 10 years of involvement in methamphetamine distribution. Id. Thus, three-quarters of the 20 kilograms he admitted to in that interview took place before the time frame set forth in the factual basis statement. Id. Mr. Walters characterized Mr. Dressen as someone who exaggerated facts to self-aggrandize. Id. He noted that the one witness who claimed Mr. Dressen possessed 20 pounds of meth had based his statement on Mr. Dressen's own boasting. Id. Mr. Walters suggested Mr. Dressen had "stretche[d] the truth" when talking to the witness. Id.

Mr. Walters emphasized that Mr. Dressen had attended treatment successfully and had been completing aftercare. Id. at p. 6. He requested the court allow Mr. Dressen to self-surrender in one week and that he be allowed to continue to attend drug treatment in prison. Id. at pp. 6-7.

Mr. Dressen addressed the court personally and expressed remorse and sorrow for his conduct, speaking about the impact it had had on his family. Id. at pp. 7-8. No witnesses spoke on behalf of Mr. Dressen at the hearing. Id. at p. 8. The government recommended a sentence within the USSG range. Id.

The court imposed sentence at the bottom of the USSG range, sentencing Mr. Dressen to 210 months' imprisonment.  Id. at pp. 9-10.  See also CR Docket No. 95 at p. 2.  The court explained that over the course of 10 years Mr. Dressen, by his own admission, had introduced 30 pounds of methamphetamine into the community.  Id. at pp. 8-10.  The court spoke of the impact those drugs had on others in the community who consumed the drugs.  Id.  In addition, the court justified its sentence by indicating the risk Mr. Dressen created when he decided to engage in a high-speed flight from law enforcement.  Id.  The court advised Mr. Dressen if he wanted to appeal, he needed to file a notice of appeal with the clerk's office within 14 days.  Id. at p. 13.

**E.    Mr. Dressen's § 2255 Motion**

Mr. Dressen timely filed his § 2255 motion on November 16, 2018, nearly six months ahead of the statute of limitations deadline.  See Docket No. 1.  In his motion, he raises three grounds in support of his request to vacate, set aside or correct his sentence.

First, he argues Mr. Walters denied Mr. Dressen his Sixth Amendment right to effective assistance of counsel in two ways.  See Docket No. 1 at p. 4; Docket No. 2 at pp. 3-7.  Mr. Dressen asserts Mr. Walters failed to file a notice of appeal on Mr. Dressen's behalf after Mr. Dressen requested he do so.  Id.  He also asserts counsel was ineffective for failing to object to the calculation of USSG sentencing range.  Id.

Mr. Dressen also argues the court itself erred in adding a two-level increase to his offense level under the USSG for fleeing a peace officer, being in possession of a firearm, possession of prescription medication, and adding four points for being on probation for the firearm offense.  See Docket No. 1 at p. 4; Docket No. 2 at pp. 8-9.

Mr. Dressen's third ground for relief is that the court improperly calculated his drug quantity for purposes of sentencing.  See Docket No. 1 at p. 4; Docket No. 2 at pp. 9-10.

The government now moves to dismiss the entirety of Mr. Dressen's motion, but concedes an evidentiary hearing is probably warranted on the failure-to-appeal issue.  See Docket No. 19; Docket No. 21 at p. 12. Mr. Dressen resists the motion.  See Docket No. 22.

## DISCUSSION

### A.  Scope of a § 2255 Motion

Section 2255 of Title 28 of the United States Code was enacted to supersede habeas corpus practice for federal prisoners.  Davis v. United States, 417 U.S. 333, 343-44 (1974).  Section "2255 was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus."  Id. at 343. Prior to the enactment of § 2255, habeas claims had to be brought in the district where the prisoner was confined, resulting in overburdening those districts where federal correctional institutions were located and presented logistical issues because the record in the underlying criminal case were often in a distant location.  United States v. Hayman, 342 U.S. 205, 212-16 (1952).

15

The enactment of § 2255 resolved these issues by requiring that the motion be filed in the sentencing court.  Id.

The scope of a § 2255 motion is seemingly broader than the scope of a habeas petition, the latter of which is typically limited to allegations of a constitutional dimension.  Section 2255 allows a federal prisoner to "vacate, set aside or correct" a federal sentence on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  See 28 U.S.C. § 2255.

Where the allegation for relief is *not* based on a violation of a Constitutional or federal statutory right or an assertion that the court was without jurisdiction, the Supreme Court has read a "fundamentality" requirement into § 2255--relief is available for only those errors which constitute a "fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure."  Hill v. United States, 368 U.S. 424, 428 (1962); see Peguero v. United States, 526 U.S. 23, 27-30 (1999).

Generally, petitioners are precluded from asserting claims pursuant to § 2255 that they failed to raise on direct appeal.  United States v. Frady, 456 U.S. 152, 167-68 (1982); McNeal v. United States, 249 F.3d 747, 749 (8th Cir. 2001).  When a § 2255 petitioner asserts a claim that is procedurally defaulted because it was not raised on direct appeal, the claim can only proceed after the

16

petitioner has shown either:  (1) actual innocence or (2) that the procedural default should be excused because there was both cause for the default and actual prejudice to the petitioner.  Bousley v. United States, 523 U.S. 614, 621-22 (1998); McNeal, 249 F.3d at 749.  Therefore, barring a claim of actual innocence, a petitioner must show both cause for why he failed to raise an issue on direct appeal as well as actual prejudice caused by the alleged errors.

Appellate courts generally refuse to review claims of ineffective assistance of counsel on direct appeal; such claims are, therefore, properly addressed in a 28 U.S.C. § 2255 motion such as the one here.  See United States v. Campbell, 764 F.3d 880, 892-93 (8th Cir. 2014); United States v. Lee, 374 F.3d 637, 654 (8th Cir. 2004) (ineffective assistance of counsel claims are not generally cognizable on direct appeal and will be heard only to prevent a miscarriage of justice or in cases where the district court has developed a record on the issue).  Therefore, no procedural default analysis is required before examining petitioner's claims of constitutionally-deficient counsel.

**B.    Ineffective Assistance of Counsel**

**1.    The Standard for Ineffective Assistance Claims**

The Sixth Amendment of the Constitution of the United States affords a criminal defendant with the right to assistance of counsel.  U.S. Const. amend. VI.  The Supreme Court "has recognized that 'the right to counsel is the right to effective assistance of counsel.' "  Strickland v. Washington, 466 U.S. 668, 698 (1984) (citing McMann v. Richardson, 397 U.S. 759, 771, n.14 (1970)).  Strickland is the benchmark case for determining if counsel's assistance was

so defective as to violate a criminal defendant's Sixth Amendment rights and require reversal of a conviction.  Id. at 687.  "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness."  Id. at 687-688.  The defendant must also show that counsel's unreasonable errors or deficiencies prejudiced the defense and affected the judgment.  Id. at 691.  The defendant must show, "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  Id. at 695.  In sum, a defendant must satisfy the following two-prong test.  Id. at 687.

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Id.

"There is a presumption that any challenged action was sound trial strategy and that counsel rendered adequate assistance and made all significant decisions in the exercise of professional judgment."  Hall v. Luebbers, 296 F.3d 685, 692 (8th Cir. 2002).  It is the petitioner's burden to overcome this presumption, and a "petitioner cannot build a showing of prejudice on a series of errors, none of which would by itself meet the prejudice test."  Id.  Counsel's conduct must be judged by the standards for legal

representation which existed at the time of the representation, not by standards promulgated after the representation. Bobby v. Van Hook, 558 U.S. 4, 7-9 (2009). American Bar Association standards and similar directives to lawyers are only guides as to what reasonableness of counsel's conduct is, they are not its definitive definition. Id. The Supreme Court distinguishes between those cases in which the new evidence "would barely have altered the sentencing profile presented to the sentencing judge," and those that would have had a reasonable probability of changing the result. Porter v. McCollum, 558 U.S. 30, 41 (2009). In assessing the prejudice prong, it is important for courts to consider "the totality of the available mitigation evidence 'both that adduced at trial, and the evidence adduced in the habeas proceeding' " and "reweigh it against the evidence in aggravation." Id. at 40-41. It is not necessary for the petitioner to show "that counsel's deficient conduct more likely than not altered the outcome" of his case, only that there is "a probability sufficient to undermine confidence in [that] outcome." Id. at 44. Judicial scrutiny of attorney performance is highly deferential, with a strong presumption that counsel's conduct falls within the range of reasonable professional conduct. Strickland, 466 U.S. at 698.

### 2.    Failure to Appeal

Despite the two-pronged Strickland test, when an attorney fails to file a direct appeal after his client instructs his to do so, no inquiry into prejudice is allowed. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000). Failure to pursue an appeal that has been requested by a client is deficient attorney performance

*per se.* Id.  In such a case, "prejudice is presumed because the defendant has forfeited his right to an appellate proceeding as a result of his counsel's error." Id. at 483-84. This remains true even where, as here, the petitioner waived his appellate rights as part of the plea agreement.  Watson v. United States, 493 F.3d 960, 964 (8th Cir. 2007).  A defendant has "the ultimate authority" to determine "whether . . . to take an appeal."  Florida v. Nixon, 543 U.S. 175, 187 (2004).  As a matter of law, the right to appeal is one that can be waived only by the defendant himself, not by counsel. Id.

In the Watson case, the district court was reversed because it denied habeas relief to a petitioner who alleged that he had requested an appeal and that his trial counsel had refused to appeal.  Id.  The Eighth Circuit stated that the district court "was not required to credit Watson's assertion" that he wanted to appeal, but that the district court could not *discredit* that assertion without first holding an evidentiary hearing to evaluate Watson's credibility. Id.  See also Barger v. United States, 204 F.3d 1180, 1182 (8th Cir. 2000) (affirming district court's denial of habeas relief on a failure-to-appeal ineffective assistance claim where the court discredited the petitioner's testimony *after an evidentiary hearing* at which both the attorney and the petitioner testified).

It is axiomatic that the petitioner must show that he asked his trial counsel to file an appeal.  Barger, 204 F.3d at 1182 (citing Holloway v. United States, 960 F.2d 1348, 1357 (8th Cir. 1992)).  Here, Mr. Dressen says he

20

asked Mr. Walters to appeal. <u>See</u> Docket No. 2 at p. 5. Mr. Walters states that Mr. Dressen never indicated that he wanted to appeal. <u>See</u> Docket No. 16 at p. 2, ¶4. This sets up a classic credibility conflict which this court believes requires an evidentiary hearing to resolve. <u>Watson</u>, 493 F.3d at 964; <u>Barger</u>, 204 F.3d at 1182. Accordingly, the court recommends that the government's motion to dismiss this allegation from Mr. Dressen's petition be denied and that an evidentiary hearing be held.

### 3.    Failure to Object to USSG Enhancements[3] of Sentence

Mr. Dressen alleges Mr. Walters was ineffective because he failed to object to convictions the government used to enhance Mr. Dressen's sentence. <u>See</u> Docket No. 2 at pp. 3-5. Mr. Dressen argues he was acquitted of the charge of fleeing a peace officer in a motor vehicle and possession of a firearm. <u>Id.</u>

Where an objection to a PSR, if it had been made and sustained, yields the same potential sentence under the USSG, a petitioner under § 2255 cannot establish <u>Strickland</u> prejudice as a matter of law based on the petitioner's lawyer's failure to lodge the objection. <u>See</u> <u>Montanye v. United States</u>, 77 F.3d 226, 230-231 (8th Cir. 1996) (where the petitioner was sentenced to 360 months incarceration, and the Guidelines range was 360 months to life under the PSR as written, but also the same range if the objection had been made and sustained, petitioner could not show prejudice). <u>Cf.</u> <u>Sun Bear v. United</u>

---

[3] Mr. Dressen does not distinguish in his pleadings between matters which served to increase his total offense level under the USSG and matters which affected his criminal history points.

States, 644 F.3d 700, 705 (8th Cir. 2011) (movant cannot state a claim under § 2255 attacking district court's sentence where the sentence was within statutory limits and the same sentence could have been imposed even if the movant were granted the § 2255 relief he requests).

However, where counsel failed to make objections to a PSR and it cannot be determined as a matter of law that those objections would not have affected the petitioner's sentence, a question of fact is created which necessitates an evidentiary hearing. See West v. United States, 994 F.2d 510, 513 (8th Cir. 1993) (evidentiary hearing required on petitioner's § 2255 motion where petitioner alleged ineffective assistance of counsel for failure to object to PSR and it could not be conclusively determined from the record that the objections would have had no effect on the petitioner's sentence); United States v. Ford, 918 F.2d 1343, 1350 (8th Cir. 1990) (holding that defendant in direct appeal established ineffective assistance of counsel where counsel failed to object to the fact that the PSR did not give him credit for acceptance of responsibility and, had defendant received such credit, his sentencing range under the Guidelines would have been different).[4]

---

[4]The court recognizes that Montanye, West, and Ford all pre-date the Court's decision in Booker, which made the USSG advisory only. See United States v. Booker, 543 U.S. 220, 245 (2005). However, even though the USSG are now only advisory, the sentencing court is still required to calculate a defendant's sentencing range under the USSG and give "serious consideration" to the USSG range before analyzing the factors under 18 U.S.C. § 3553. Gall v. United States, 552 U.S. 38, 46 (2007). Hence, this court concludes that the Montanye, West, and Ford cases remain viable precedent for § 2255 proceedings in a post-Booker world.

### a.    Criminal History Points and Criminal History Category

Under the 2017 USSG, a defendant is placed in criminal history category II if he has two or three criminal history points.  A defendant is placed in criminal history category III if he has four to six points.  Mr. Dressen argues that he was never convicted of fleeing a peace officer in a motor vehicle.  See Docket No. 2 at p. 4.  However, examination of Mr. Dressen's PSR indicates he was never assessed any criminal history points for this.  See CR Docket No. 91 at p. 11, ¶40.

Mr. Dressen was assessed two criminal history points because he committed the instant crime while still on probation for a felony drug conviction in Minnesota.  See USSG § 4A1.1(d); CR Docket No. 91 at p.11, ¶41.  These two criminal history points are immutable.

Mr. Dressen was sentenced in Minnesota state court for fifth-degree drug possession on June 26, 2015, and placed on five years' probation.  See CR Docket No. 91 at p. 11, ¶40.  That probation would end on June 25, 2020.  Mr. Dressen admitted he committed the instant offense in 2016-17, which was a time period when he was still on probation in Minnesota.  See CR Docket No. 74.

The USSG provide that two criminal history points should be added if the defendant committed any portion of the instant offense while under any criminal justice sentence, including probation, which includes unsupervised probation.  See USSG § 4A1.1(d) and cmt. 4.  Mr. Dressen committed the instant offense between December, 2016, and February, 2017, so the instant

offense was committed while he was on probation in the Minnesota state case. Accordingly, two criminal history points are assessed for this. <u>See</u> USSG § 4A1.1(d). Mr. Dressen does not attack or challenge those points. The court also concludes these two points were properly assessed under the USSG. So it is a given for purposes of analyzing Mr. Dressen's § 2255 motion that he would have received at least these two criminal history points.

The other two criminal history points assessed to Mr. Dressen in the PSR were for two convictions on which sentence was imposed on the same day in Minnesota state court: (1) a firearms offense and (2) fifth-degree drug possession. Mr. Dressen argues although he was convicted of possession of a firearm, this conviction was later overturned because he had his firearm rights restored in 2011. <u>See</u> Docket No. 2 at p. 4. The court will assume this to be true for the sake of analyzing Mr. Dressen's argument.

The USSG provide that two criminal history points should be assessed for any sentence of imprisonment of at least sixty days. <u>See</u> USSG § 4A1.1(b). Mr. Dressen admitted several times at his change of plea hearing that he had been convicted of fifth-degree possession of drugs on June 26, 2015, in Lincoln County, Minnesota. <u>See</u> CR Docket No. 98 at pp. 7-8, 10-12, and 23. The PSR reveals that Mr. Dressen's sentence for this drug crime was 13 months' custody, stayed for 5 years, and 180 days' confinement. <u>See</u> CR Docket No. 91 at p. 11, ¶40. Under USSG § 4A1.1(b), then, Mr. Dressen would properly be assessed two criminal history points for this conviction. Therefore, even setting

aside the firearms conviction that Mr. Dressen disputes, he would have had these two criminal history points in any event.

What is confusing is that the firearms charge and the fifth-degree drug charge appear in the same paragraph in the PSR and only two, not four, criminal history points are assessed for both crimes. See CR Docket No. 91 at p. 11, ¶40. This is counterintuitive because both the firearms conviction and the fifth-degree drug conviction resulted in sentences of 60 days or more each, so one would intuit that there should have been four points assessed. Id. Giving Mr. Dressen the benefit of the doubt, one can see why he believes that if the firearms charge is subtracted, it would result in fewer criminal history points. Unfortunately for him, it does not. There is a basis in the USSG for this.

When multiple sentences are imposed on the same day by the same court, the sentences for two separate convictions are treated as a single sentence for purposes of counting criminal history points. See USSG § 4A1.2(a)(2)(B). Because the allegedly vacated conviction for the firearms offense and the conviction for the fifth-degree drug offense were imposed on the same day by the same court, they count for one—not two—prior sentences. Id. Therefore, what would have been four points for two sentences (two points for each conviction), is collapsed and condensed into one sentence which counts for only two points. Id. Therefore, even if Mr. Dressen is right about the firearms offense being later vacated, he would still be assessed two criminal history points for the fifth-degree drug conviction. Id. Standing alone, the

fifth-degree drug conviction resulted in a sentence of imprisonment of 60 days or more, so it is accorded two points.  See USSG § 4A1.1(b).

Under the above law regarding collateral relief, Mr. Dressen cannot show Strickland prejudice for his counsel's failure to object to the inclusion of the firearms charge in his PSR.  Had counsel objected to the inclusion of that offense, Mr. Dressen's criminal history points would still have been four:  two points for committing the instant offense while on probation for the Minnesota drug offense and two points for the Minnesota drug conviction itself.

Assuming for the sake of argument that somehow counsel could have objected to the two points for the fifth-degree drug offense, and assuming that objection had any chance of success, Mr. Dressen *still* cannot show prejudice. If Mr. Dressen had two criminal history points instead of four, he would have been in criminal history category II.  He cannot argue he would have been in category I as that would require him to show that he had zero or only one criminal history point.  He raises no arguments herein that, if those arguments were successful, would have the potential to take away the two other points.

Assuming, then, that Mr. Dressen could establish grounds for an ineffective assistance claim that would, if successful, place him in criminal history category II, his USSG range would have been 188 to 235 months' imprisonment.  That is because a total offense level of 35 combined with a criminal history category of II yields a sentencing range of 188-235 months. The sentence Mr. Dressen actually received—210 months—was within that same range.  Under the above authorities, then, Mr. Dressen has failed to

demonstrate <u>Strickland</u> prejudice because, even if counsel had made the objections Mr. Dressen asserts should have been made, and even if those objections were successful, Mr. Dressen cannot show his sentence would have been any different.

Counsel could not have succeeded in any objections that the Minnesota drug conviction should not have been considered in the PSR. The court engaged in extensive discussion with Mr. Dressen about this conviction at the change of plea hearing--because it was this conviction that was the basis for the government's § 851(a) information. <u>See</u> CR Docket No. 98 at pp. 7-8, 10-12, & 23. Mr. Dressen several times admitted to the court during that change of plea hearing that he had been convicted of this felony drug crime in Lincoln County, Minnesota. <u>Id.</u> None of Mr. Dressen's arguments about counsel's alleged ineffectiveness in failing to object to the criminal history computation lead to any calculation under the USSG that would have moved Mr. Dressen from criminal history category III or changed his sentence from 210 months' incarceration. He has not shown <u>Strickland</u> prejudice.

### b.    Total Offense Level Computation

Under the PSR, two points were added to Mr. Dressen's base offense level under the USSG for obstruction of justice. <u>See</u> CR Docket No. 91 at p. 8, ¶28. The basis for this increase was Mr. Dressen recklessly creating a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer on February 12, 2017. <u>Id.</u> at p. 5, ¶12; p. 8,

¶28.[5]  Section 3C1.2 of the USSG provided the basis for the increase set forth

in the PSR.  Id.  That provision allows a two-point increase "if the defendant

recklessly created a substantial risk of death or serious bodily injury to another

person in the course of fleeing from a law enforcement officer."  See USSG

§ 3C1.2.

Mr. Dressen asserts he was acquitted of the charge of fleeing a peace

officer.  See Docket No. 2 at pp. 3-5.  However, Mr. Dressen appears to be

referencing conduct which occurred in *2013* in connection with the above-

discussed firearms and fifth-degree drug offense in Minnesota.  See CR Docket

No. 91 at p. 11, ¶40 (reciting that, in addition to the two charges of which

Mr. Dressen was convicted, he was initially charged with fleeing a peace officer

and that charge was later dismissed).  The basis for the two-point obstruction

of justice charge in Mr. Dressen's PSR was conduct which occurred in *2017*,

not *2013*.  Id. at p. 5, ¶12; p. 8, ¶28.  Thus, Mr. Dressen's allegation is

misplaced.

Furthermore, if Mr. Dressen is arguing that his offense level was

improperly increased because of conduct of which he was never convicted, that

is a misplaced argument too.  Conduct used to increase a defendant's base

offense level under the USSG need not be conduct proven beyond a reasonable

doubt in a criminal prosecution resulting in a conviction.  It need only be

---

[5] The narrative in the PSR on page 5 gives the full date of February 12, 2017.
See CR Docket No. 91 at p. 5, ¶12.  The description of the increase in ¶28 of
the PSR contains a typographical error in that the "7" at the end of the year is
missing.  Id. at p. 8, ¶28.  The PSR in ¶28 reads, "on 02/12/201 the defendant
was involved in a pursuit with law enforcement."

shown by a preponderance of the evidence by the government.  <u>United States v. Tyndall</u>, 521 F.3d 877, 882 (8th Cir. 2008).  Here, the PSR based the obstruction increase on law enforcement investigative reports that indicated that on February 12, 2017, officers chased Mr. Dressen, but then discontinued their pursuit of Mr. Dressen because the pursuit became "a grave risk to public safety."  <u>See</u> CR Docket No. 91 at p. 5, ¶12; p. 8, ¶28.

The Eighth Circuit has upheld an obstruction of justice increase in a methamphetamine conspiracy case where law enforcement officers attempted to arrest the defendant in the midst of a controlled buy and the defendant escaped in his vehicle at a high rate of speed.  <u>United States v. Silva</u>, 630 F.3d 754, 755-57 (8th Cir. 2011).  Those circumstances match the allegations in Mr. Dressen's case almost identically.  Police were in the midst of conducting a controlled buy from Mr. Dressen at a truck stop; in the <u>Silva</u> case it was at a motel parking lot.  <u>See</u> CR Docket No. 91 at p. 5, ¶12; <u>Silva</u>, 630 F.3d at 755.  Mr. Dressen detected two vehicles which were conducting surveillance on him and fled the area at a high rate of speed with police in pursuit.  <u>See</u> CR Docket No. 91 at p. 5, ¶12.  Silva detected law enforcement officers, backed his car into one police vehicle and then drove off at a high rate of speed, ignoring police shouts for him to stop.  <u>Silva</u>, 630 F.3d at 755-56.  Had counsel objected to the two-point increase in Mr. Dressen's PSR based on obstruction under USSG § 3C1.2, it would almost certainly have been unsuccessful based on the <u>Silva</u> case.

In addition, the court notes counsel *did* object to the obstruction of justice increase initially.  See CR Docket No. 89 at p. 2, ¶6.  This was later resolved by a stipulation between Mr. Dressen and the government whereby the parties agreed Mr. Dressen's initial total offense level of 38 should instead be 36.  See CR Docket No. 100 at pp. 3-4.  Mr. Dressen had an unrestricted opportunity to address the court at sentencing and he never objected to the stipulation to the obstruction of justice increase.  Id. at pp. 7-8.  As discussed in more detail below, a stipulation is governed by contract principles and Mr. Dressen has not asserted any facts from which the court could conclude his contract—the stipulation to the obstruction increase—was not a valid contract.

None of Mr. Dressen's arguments regarding the calculation of his total offense level or his criminal history category would change his sentencing range so that a sentence of 210 months' incarceration was not a potential sentence.  Accordingly, the court recommends granting the government's motion to dismiss this ineffective assistance claim on the merits for failure to show Strickland prejudice.

## C.    Mr. Dressen's Claims of Court Error

As discussed above, petitioners are precluded from asserting claims pursuant to § 2255 that they failed to raise on direct appeal.  Frady, 456 U.S. at 167-68; McNeal, 249 F.3d at 749.  Such claims are procedurally defaulted. Id.  Here, Mr. Dressen did not appeal, so his claims that the court erred in

30

calculating his USSG range and his drug quantity are procedurally defaulted.  Id.

When a § 2255 petitioner asserts a claim that is procedurally defaulted because it was not raised on direct appeal, the claim can only proceed after the petitioner has shown either:  (1) actual innocence or (2) that the procedural default should be excused because there was both cause for the default and actual prejudice to the petitioner.  Bousley, 523 U.S. at 621-22; McNeal, 249 F.3d at 749.  Therefore, barring a claim of actual innocence, a petitioner must show both cause for why he failed to raise an issue on direct appeal as well as actual prejudice caused by the alleged errors.  Id.  Mr. Dressen never asserts that he is actually innocent, so the court examines only cause and prejudice.

Mr. Dressen asserts that the "cause" for his procedural default was counsel's failure to file an appeal at Mr. Dressen's request.  However, if it is clear that the movant cannot show prejudice, the court need not address whether there is cause for the default.  Moore-El v. Luebbers, 446 F.3d 890, 898 (8th Cir. 2006) (stating—without so holding—that even if a movant could show "cause," his claim was barred by procedural default because he could not demonstrate "prejudice").  Because the court concludes Mr. Dressen cannot show prejudice, the court does not address whether counsel's failure to file an appeal constitutes "cause."

Mr. Dressen realleges all the same sentence-calculation errors in his direct claim against the court as he did in his ineffective assistance claim:  that the court improperly considered his firearms offense in "enhancing"

31

Mr. Dressen's sentence, that the court improperly considered the Minnesota drug offense in "enhancing" Mr. Dressen's sentence, and that the court improperly considered charges of fleeing a peace officer to "enhance" his sentence. Each of these arguments was discussed above in connection with Mr. Dressen's claim of ineffective assistance. Each was dismissed because Mr. Dressen failed to show prejudice. Mr. Dressen is also required to show prejudice in order to excuse his procedural default. Bousley, 523 U.S. at 621-22; McNeal, 249 F.3d at 749. Therefore, his direct claims of error against the district court for these same alleged sentence-calculation errors also fail for the same reason: Mr. Dressen cannot show prejudice.

Mr. Dressen also argues the district court erred in calculating the drug quantity which the court attributed to him. See Docket No. 2 at p. 9-10. At the sentencing hearing, the government and Mr. Dressen *stipulated* to a drug quantity of 20 kilograms. See CR Docket No. 100 at p. 4. The parties' stipulation was based on Mr. Dressen's own statements to law enforcement during his post-Miranda interview in which he told police he had obtained one to two pounds of methamphetamine every three to four months for the last 10 years. Id. Using a drug quantity of 20 kilograms, the USSG established a base offense level of 36. See USSG § 2D1.1(c). That base offense level was stipulated to by the parties and adopted by the court. See CR Docket No. 100 at pp. 3-4.

Mr. Dressen had an unfettered right to address the court at sentencing. Id. at pp. 7-8. He never disavowed the stipulation nor did he suggest to the

court that the stipulated drug amount was incorrect, unfair, or not representative of his role in the drug conspiracy.  Id.

The parties' stipulation as to drug quantity was an extension of the parties' plea agreement.  Presumably, Mr. Walters' objections to the PSR provided the catalyst for the government to agree to certain facts, including drug quantity, that were not initially addressed in the written plea agreement.

Plea agreements and stipulations like the one in this case are contracts and, as such, they are interpreted and enforced according to contractual principals.  United States v. Thompson, 403 F.3d 1037, 1039 (8th Cir. 2005).  Where, as here, the district court did no more than adopt the parties' contractual agreement, there was no error by the district court.  Instead, in order to avoid the implications of his stipulation, Mr. Dressen would have to show that there was some reason to avoid or void the contract.

A valid contract requires parties capable of contracting, their consent, a lawful object, and sufficient cause or consideration.  See SDCL § 53-1-2.  Consent of the parties must be free, mutual, and communicated to each other.  See SDCL § 53-3-1.  Mutual assent means there has been a meeting of the minds on all essential elements or terms in order to form a binding contract.  Winegeart v. Winegeart, 910 N.W.2d 906 (S.D. 2018).

Here, the court's plea colloquy with Mr. Dressen established he had the ability to enter into a contract freely, voluntarily, and knowingly.  He testified his consent was given without extraneous promises, threats or coercion.  And there was certainly consideration given for his promise to be bound by a base

offense level of 36:  without the stipulation, his base offense level would have been a 38 as reflected in the PSR.  See CR Docket No. 91 at pp. 7-8, ¶¶ 18 & 24.

The court did not engage in the same level of inquiry regarding the drug-quantity stipulation at the time of sentencing as the court had previously engaged in at the time of the change of plea, but nevertheless, one can infer from the findings and conclusions the court entered at the end of the change of plea hearing that Mr. Dressen was lucid, intelligent, and acted voluntarily.  The fact that he failed to voice any objection to the drug-quantity stipulation at the sentencing hearing speaks volumes.

Mr. Dressen now attempts to disavow his stipulation to the drug quantity by arguing he was not really part of the conspiracy, he was just a user of methamphetamine.  See Docket No. 2 at pp. 9.  This is directly contrary to his solemn sworn statements to the court at his change of plea hearing.  See CR Docket No. 98.  "[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter" disavow those solemn, sworn statements unless there are grounds to find his plea was not voluntary, knowing and intelligent.  Tollett v. Henderson, 411 U.S. 258, 267 (1973).

Here, Mr. Dressen stipulated in open court to 20 kilograms and a resulting USSG base offense level of 36.  See CR Docket No. 100 at pp. 3-4.  He benefitted from this stipulation by receiving a base offense level two points

34

lower than it would have been if he had not entered into a stipulation with the government.  Compare id. with CR Docket No. 91 at pp. 7-8, ¶¶18 & 24.  He asserts no grounds to find this contract between himself and the government is void.  He asserts no ground from which this court could conclude his plea was anything other than voluntary, knowing and intelligent.

Returning to the procedural default analysis at hand, Mr. Dressen must show cause and prejudice for the procedural default of his drug quantity argument.  Bousley, 523 U.S. at 621-22; McNeal, 249 F.3d at 749.  If the movant fails to show prejudice, the court need not address the cause prong of the analysis.  Moore-El, 446 F.3d at 898.  The court concludes he cannot show prejudice.  In order to prevail on this argument, he would have to show that the stipulation he entered into was not a valid contract and/or that his plea was not voluntary, knowing and intelligent.  Mr. Dressen asserts no facts or arguments pertaining to either of these constructs.  Therefore, he cannot show prejudice as a result of not having raised the drug quantity argument prior to now.  His procedural default is, therefore, not excused.

## CONCLUSION

Based on the foregoing facts, law, and analysis, this magistrate judge respectfully recommends the government's motion to dismiss [Docket No. 19] be granted in all respects except that an evidentiary hearing should be held on Mr. Dressen's ineffective assistance of counsel claim in which he asserts he asked his lawyer to file an appeal and his lawyer failed to file the appeal.

**NOTICE TO PARTIES**

The parties have fourteen (14) days after service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the district court. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED this 18th day of April, 2019.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge