UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| CHAD DOUGLAS DRESSEN,<br><br>Movant,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | 4:18-CV-04153-KES<br><br><br>ORDER ADOPTING REPORT AND RECOMMENDATION AND GRANTING MOTION TO DISMISS |

Movant, Chad Douglas Dressen, filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. Docket 1. The United States moves to dismiss Dressen's petition. Docket 19. The matter was referred to United States Magistrate Judge Veronica L. Duffy under 28 U.S.C. § 636(b)(1)(B) and this court's October 16, 2014 standing order. Magistrate Judge Duffy recommends that Dressen's motion be dismissed. Docket 42. Dressen, represented by appointed counsel, timely filed objections to the report and recommendation. Docket 45. For the following reasons, the court adopts Magistrate Judge Duffy's report and recommendation and dismisses Dressen's petition.

**FACTUAL BACKGROUND**

A full factual background was provided by the magistrate judge in her report and recommendation. Docket 42 at 2-26. Thus, this court will only give

a simple explanation and points to the magistrate judge's report and recommendation for the full background.

The United States moved to dismiss Dressen's petition on February 28, 2019. Docket 19. Magistrate Judge Duffy issued a Report and Recommendation, which this court adopted. Dockets 23, 32. After the adoption of the Report and Recommendation, an evidentiary hearing was held on the sole issue of whether or not Dressen instructed his attorney, D. Sonny Walter, to appeal his case after Dressen was sentenced. *See* Docket 39. At the hearing, Dressen was represented by appointed counsel. *See* Docket 33. Three witnesses testified: Dressen, his girlfriend, Teresa Hanson,[1] and Walter.  *See* Docket 41 at 2.

Dressen testified that he pleaded guilty to a charge involving distribution of methamphetamine. *Id.* at 6. Walter represented him on the charges. *Id.* He stated that during the pendency of Walter's representation, Dressen spoke with Walter around four times in person and four times over the phone. *Id.* at 8. He stated that initially, he believed he would be facing a 10-year prison sentence after signing a plea agreement. *Id.* at 10. Three days before the sentencing hearing, Walter informed Dressen that Dressen was instead facing 25 years unless he agreed to stipulate to a 17-year sentence. *Id.* 12-13. Dressen stated that Walter told Dressen "you're going to have to take that." *Id.* at 13. Hanson

---

[1] Theresa Hanson used both the last names Hanson and Haugen during the events at issue in the hearing. The parties stipulated that they are the same person, and the court here refers to Teresa as "Hanson." Docket 41 at 64.

also testified that she spoke with Walter and her understanding was that Dressen had to "take the 17 years." *Id.* at 28.

After Dressen's sentencing hearing, Dressen, Walter, and Hanson stepped into the hallway outside the courtroom. *Id.* at 16, 28. Dressen testified that he told Walter: "[W]e have to appeal this." *Id.* at 16. He testified that Walter said Walter needed to get the paperwork together before he could "do an appeal." *Id.* At the conclusion of the conversation, Dressen believed Walter would file an appeal. *Id.* at 17. Around three to four months after he was sentenced, after being transferred to a correctional facility in Gilmer, West Virginia, Dressen learned that Walter did not file an appeal. *Id.* 17-18.

Throughout Dressen's criminal case, Hanson occasionally acted as an intermediary between Walter and Dressen. Hanson would contact Dressen and relay messages when Walter was unable to reach Dressen. *Id.* at 44. Hanson testified that her understanding after speaking with Walter prior to Dressen's sentencing hearing was that the "appeal process would start as soon as [he] was sentenced." *Id.* at 28. She also testified that immediately after Dressen's sentencing hearing, Dressen, Walter, and Hanson stepped into the hall. *Id.* At that time, according to Hanson, Walter assured Hanson and Dressen that he would start appealing Dressen's case. *Id.* at 29. Hanson stated that Dressen asked Walter "to make sure that he was going to appeal" Dressen's case. *Id.* After Hanson found out that Walter did not appeal, she began to try to contact Walter by phone and text message. *Id.* at 29-30. She testified that Walter

stopped returning her calls and did not explain why he did not file an appeal for Dressen. *Id.*

Walter testified that he is a lawyer who has been practicing since 1989. *Id.* at 37. He worked in the Minnehaha County Public Defender's Office for seven years, and then went into private practice for himself. *Id.* He has always specialized in criminal defense and prisoner litigation. *Id.* He served as a contract attorney for several state prisons for 17 years and filed direct criminal appeals for prisoners who wanted to appeal and whose trial counsel did not file an appeal. *Id.* He has no secretary or assistant and answers his office and cell phones himself. *Id.* at 17-18. He calendars all of his own deadlines. *Id.*

Walter testified that when a defendant asks him to appeal their sentence, it is a "significant event." *Id.* at 41-43, 49-51. He carries his cell phone and a paper calendar everywhere and when he becomes aware of a deadline, he immediately enters it in both his paper and cell phone calendars. *Id.* at 41. He testified that he is aware that the deadline to appeal a criminal sentence in federal court is 14 days. *Id.* at 51.

Walter does not recall exactly what transpired after the sentencing hearing but read the transcript of the sentencing and knew that the court did not remand Dressen to Marshal custody immediately after the hearing. *Id.* at 41. Thus, Walter assumes he would have talked to Dressen in the hallway after the hearing. *Id.* He states that if Dressen would have asked him to file an appeal, he would have noted that in his calendar. *Id.* He states that he did not enter what would have been the appeal deadline in his calendar. *Id.* Walter

stated that had Dressen asked to appeal the case, Walter would have had "a number of conversations" with him about that decision because Walter believed there were no issues to appeal. *Id.* at 42. This was because Dressen gave up his right to appeal as part of the plea agreement. *Id.* Walter testified that on the day of Dressen's sentencing, Walter put in his calendar the date he would have to remind the government to file a Rule 35 motion in Dressen's case. *Id.* at 50.

According to Walter, Hanson texted him before Dressen's sentencing on May 18, 2018, and did not contact him again until mid-July, 2018, long after the 14-day appeal period expired. *Id.* at 54. When Hanson contacted Dressen in July, she did not ask about the appeal; rather, she asked Walter to send Hanson a document in prison. *Id.* Hanson also contacted Walter to ask if Dressen could be moved to a different prison, and he informed her in response that he was not the appropriate person to contact about that. *Id.* at 55.

## STANDARD OF REVIEW

The court's review of a magistrate judge's report and recommendation is governed by 28 U.S.C. § 636 and Rule 72 of the Federal Rules of Civil Procedure. The court reviews de novo any objections to the magistrate judge's recommendations as to dispositive matters that are timely made and specific. 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). In conducting its de novo review, this court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *United States v. Craft*, 30 F.3d 1044, 1045 (8th Cir. 1994).

## DISCUSSION

Congress enacted 28 U.S.C. § 2255 to supersede habeas corpus claims

for federal prisoners. *Davis v. United States*, 417 U.S. 333, 343-44 (1974).

Section 2255 allows federal prisoners to "vacate, set aside or correct" a federal

sentence on the ground that "the sentence was imposed in violation of the

Constitution or laws of the United States . . . or is otherwise subject to

collateral attack." 28 U.S.C. § 2255. Generally, petitioners may not raise claims

under § 2255 that they failed to raise on direct appeal. *United States v. Frady*,

456 U.S. 152, 167-68 (1982). But because appellate courts generally refuse to

review ineffective assistance of counsel claims on direct appeal, such claims are

properly addressed under § 2255 motions. *See United States v. Campbell*, 764

F.3d 880, 892-93 (8th Cir. 2014).

The Sixth Amendment to the Constitution guarantees criminal

defendants the right to assistance of counsel. U.S. Const. amend. VI. "[T]he

right to counsel is the right to effective assistance of counsel." *Strickland v.*

*Washington*, 466 U.S. 668, 698 (1984) (internal quotation omitted). Generally,

ineffective assistance claims are analyzed under a two-pronged test: the

defendant must show, first, that his or her counsel's performance was

deficient; and second, that he or she was prejudiced by the deficiency. *Id.* at

687. But when an attorney fails to file a direct appeal after his or her client

instructs him or her to do so, courts do not inquire about whether the

defendant was prejudiced. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000).

Thus, in failure to appeal cases, a petitioner must only show that his counsel

failed to file an appeal after being instructed to do so and need not fulfil the prejudice prong of the *Strickland* test. *Id.*

Here, the sole issue is whether or not Dressen asked Walter to file an appeal for him after his sentencing hearing. Magistrate Judge Duffy credited Walter's testimony from the hearing and concluded that Dressen did not request that an appeal be filed on his behalf before the expiration of the 14-day appeal period. Docket 42 at 33. The court now reviews de novo that factual finding.

Dressen and Hanson testified that Dressen asked Walter to file an appeal immediately after the hearing ended, while in the hallway outside the courtroom. Docket 41 at 16, 48. Walter testified that while he does not remember exactly what transpired outside the courtroom, he knows that had Dressen asked him to file an appeal, he would have marked the deadline in his calendar and would have had a "serious discussion" with Dressen because Dressen had given up his right to appeal in his plea agreement. *Id.* at 42. The court finds Walter's testimony, that Dressen did not ask him to file a direct appeal, the more credible testimony for several reasons.

Walter has been a practicing criminal defense lawyer since his graduation from law school in 1989. *Id.* at 37. For 17 years, he assisted inmates in penitentiaries in South Dakota in filing appeals and habeas corpus claims. *Id.* at 37-38. An attorney who spent a substantial amount of his career assisting prisoners in habeas corpus claims would very likely know how important it is for attorneys to file appeals when their clients request one.

7

Walter's unique career background supports his claim that had he been made aware of Dressen's desire to appeal, he would have filed the appeal.

Further, Walter testified that he has a habit of calendaring deadlines in both his cell phone and paper calendar. *Id.* at 41. He knew that an appeal triggers a deadline: if Dressen had asked to appeal, Walter would have 14 days from the date of final judgment to file the appeal. *Id.* at 51. He marked the other deadline triggered by Dressen's sentencing hearing—the deadline for the United States to file a Rule 35 motion in Dressen's case—during the sentencing hearing. *Id.* at 50. This, too, bolsters the credibility of Walter's claim that had Dressen requested an appeal, Walter would have filed it or calendared the deadline—neither of which Walter did.

Walter also knew that Dressen likely had very little, if anything, that he could appeal. *Id.* at 42. Dressen gave up his appeal rights as part of the plea agreement. *Id.* The court sentenced Dressen at the low end of the guideline range. *Id.* Walter, an experienced criminal lawyer, would have had a "serious discussion" with Dressen if Dressen asserted that he wanted to appeal his sentence. *Id.* The court finds persuasive that such a request would have been a memorable event for Walter, who would have had to explain to Dressen why an appeal was very unlikely to succeed in his case.

The text message records from Hanson to Walter do not reflect that Hanson was asking Walter about an appeal when she allegedly found out Walter had not filed one. *Id.* at 40. This supports Walter's account: that Hanson never contacted him about an appeal. It does not show that Hanson

and Dressen expected an appeal to be filed and were confused and upset when one was not, as they claim.

Also, Dressen admitted that he and Hanson discussed what they were going to testify to prior to the hearing *Id.* at 24. He stated that they had told each other how they were going to testify. *Id.* Hanson, however, testified that she had not discussed the hearing or their testimony with Dressen prior to the hearing. *Id.* at 33. This casts doubt on the credibility of Hanson's testimony. Hanson testifying that she did not discuss the testimony with Dressen suggests that she felt she needed to hide her communications with Dressen, and calls into question her motives for testifying at the hearing.

The court does not find persuasive Dressen's argument that because Walter did not calendar *all* "significant events," that he likely knew about Walter's request and still failed to calendar the appeal deadline. *See* Docket 45 at 7. Walter testified that he would have noted a "significant event" like Dressen asking to appeal his case in his file and put it in his phone. Docket 41 at 42, 49-50. But, as Dressen notes, Walter did not note in his file that he told Dressen that Dressen's possible prison sentence was much longer than previously anticipated. *See* Docket 45 at 8-9. Walter stated he does not have a secretary, so "the buck stops with [him]" and he makes a habit of calendaring deadlines as they come up. Docket 41 at 50. The court is persuaded by Walter's assertion that deadlines are of particular importance to him as a solo practitioner, and that recording a deadline triggered by Dressen's request was

9

of greater importance for him to record than was the change in Dressen's guideline range.

Dressen also argues that his failure to bring up any details about his claim that he instructed Walter to file an appeal prior to the evidentiary hearing should not be used to impugn his credibility. Docket 45 at 4. The court finds that the opposite is true. First, while Dressen was a pro se litigant until the evidentiary hearing, he does not appear to have had difficulty articulating facts to support his claims at any point prior to being appointed counsel. Rather, his original motion for relief is replete with facts—he details Walter's failure to investigate, alleged bias, and failure to object. Docket 2 at 4-6. But his allegation regarding Walter's failure to file his appeal is only a bare assertion that "[t]he evidence in this case establishes that petitioner advised his counsel that he wishe[d] to appeal his sentencing but was completely ignored." *Id.* at 7. Dressen's credibility is undermined by his failure to raise facts about the appeal issue—and only the appeal issue—prior to the evidentiary hearing.

Next, Dressen argues that his failure to follow up with Walter about his appeal during the 14-day period after his sentencing should not be used to show that his allegations regarding asking Walter to file the appeal are not credible. On this point the court agrees with Dressen. He was in custody at the South Dakota State Penitentiary and did not have immediate access to phones during those 14 days. Docket 41 at 17. Further, he should have been entitled to rely on the assumption that if he had asked Walter to file an appeal, Walter would file an appeal. Similarly, Hanson's failure to follow up with Walter does

10

not show that Dressen did not request an appeal. Hanson, too, could have reasonably relied on Walter to file the appeal if Dressen had asked him. But even assuming Dressen and Hanson had valid reasons to not follow up with Walter during the 14-day period, the court still finds Walter's testimony the most persuasive of the three. Thus, the court finds that Dressen did not ask Walter to file an appeal during the 14-day period after his sentencing hearing.

## CERTIFICATE OF APPEALABILITY

When a district court denies a petitioner's § 2255 motion, the petitioner must first obtain a certificate of appealability before an appeal of that denial may be entertained. *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). This certificate may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A "substantial showing" is one that proves "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Stated differently, "[a] substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). Dressen made a substantial showing that his claim that he asked Walter to appeal his case is debatable among reasonable jurists, that another court could resolve the issue raised in his claim differently, or that a question raised by his claim deserves additional proceedings. Thus, a certificate of appealability is issued only on the issue of

whether Walter provided ineffective assistance of counsel by failing to timely file a notice of appeal.

## CONCLUSION

The court finds that Dressen did not ask Walter to appeal his sentence prior to the 14-day deadline. His claim of ineffective assistance of counsel thus cannot succeed. Thus, it is

ORDERED:

1. Dressen's objections to the report and recommendation (Docket 45) are overruled.

2. The report and recommendation (Docket 42) is adopted.

3. Respondent's motion to dismiss (Docket 19) is granted.

4. Dressen's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 (Docket 1) is dismissed.

5. A certificate of appealability is granted.

Dated August 25, 2020.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE